Louis L. Fragala and Ann Fragala v. Commissioner.
Fragala v. Commissioner
Docket No. 61084.
United States Tax Court
T.C. Memo 1958-81; 1958 Tax Ct. Memo LEXIS 153; 17 T.C.M. (CCH) 401; T.C.M. (RIA) 58081; April 30, 1958
*153 Upon the facts, held: (1) That petitioners realized income in the total amount of $10,100 during 1946 which they failed to report in their joint return. (2) That for failure of proof, petitioners are not entitled to miscellaneous deductions claimed in their return and disallowed by the respondent. (3) That part of the deficiency is due to fraud with intent to evade tax under section 293(b), 1939 Code. (4) That petitioners' failure to file a declaration of estimated tax for 1946 was due to willful neglect and was not due to reasonable cause, and that, therefore, the addition under section 294(d)(1)(A) was properly made. (5) That petitioners substantially underestimated their income tax for 1946, and, therefore, the addition under section 294(d)(2) was properly made. Louis L. Fragala, 231 Linden Street, Brooklyn, N. Y., pro se. John L. Dunkel, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion For the taxable year 1946, the respondent determined a deficiency in income tax in the amount of $2,995.81; a 50 per cent addition to the deficiency under section 293(b), 1939 Code, in the amount of $1,497.91; an addition under section *154 294(d)(1)(A) in the amount of $252.18; and a 6 per cent addition under section 294(d)(2) in the amount of $168.13. The chief questions are whether petitioners realized and failed to report income in 1946 in the amount of $10,100; whether any part of the deficiency, if any, is due to fraud with intent to evade tax; whether petitioners are entitled to miscellaneous deductions; and whether the respondent properly determined additions under sections 294(d)(1)(A) and 294(d)(2). Findings of Fact Petitioners reside in Bayshore, Long Island, New York. The joint return for the period here involved was filed with the collector of internal revenue for the first district of New York. Louis L. Fragala (hereinafter referred to as petitioner) was born in Brooklyn, New York in 1914. He attended public schools in Brooklyn until 1932 when he graduated from high school. From January of 1933 until November of 1936 petitioner was employed in a garment factory in Brooklyn, New York, at a salary of approximately $40 per week. From December 1, 1936 until October 16, 1940, petitioner was employed as a mechanic at the 102nd Quartermaster Regiment Armory, Brooklyn, New York at a salary of $125 per month. *155 On October 16, 1940, petitioner was inducted into the United States Army. On September 5, 1941, he received an honorable discharge because of the dependency of his family. From October 4, 1941 until September 31, 1942, petitioner was employed as an automobile mechanic and later foreman for the Quartermaster Corps at Miller Field, Staten Island, New York. During this period he received the following gross salary: 10/4/41 to 5/ 1/42
$1,680 per annum
5/1/42 to 6/ 1/42
1,860 per annum
6/1/42 to 7/ 1/42
2,000 per annum
7/1/42 to 8/31/42
2,400 per annum
On September 1, 1942 petitioner was transferred to the office of Port Transportation Officer, New York Port of Embarkation, Brooklyn, New York. His gross earnings and income tax withheld while so employed through the year 1946 were as follows: Gross
Tax
Earnings
Withheld
9/1/42 to 12/15/42
$ 976.58
None
1943 *
4,573.08
$366.88
1944
4,096.56
424.20
1945
4,500.69
520.70
1946
4,596.73
318.40
Petitioners Louis L. Fragala and Ann Fragala were married July 26, 1936. They have three children born May 1937, October 1940 and August *156 1945. During the taxable year 1946, petitioner's position with the Army Transportation Corps was that of civilian chief of the Technical Publications Branch, New York, New York. His duties were to review and recommend the approval or disapproval of manuscripts of technical manuals designed for use by the Army. The technical manuals are required by the Army for the instruction of its men in the operation and maintenance of various items of equipment. The manuals were, to the greater extent, prepared by independent contractors unconnected with the supplier of the equipment. Edgar Gannon, formerly First Lieutenant, United States Army, was the officer in charge of the Technical Publications Branch, United States Army Transportation Corps, New York New York, until his discharge in July 1946. In July 1946, petitioner and Edgar Gannon organized a corporation known as Analytical Design, Inc. The corporation was formed to obtain contracts or subcontracts for the preparation of technical manuals designed for use by the Army. Petitioner, Ann (Posanti) Fragala, was made president of Analytical Design, Inc. to conceal petitioner Louis Fragala's identity with the corporation. Petitioner *157 was the only person having a financial interest in Analytical Design, Inc. Edgar Gannon was not an officer of Analytical Design, Inc., nor did he own any shares of the corporation. Edgar Gannon received no salary and his only duties for the corporation were the part-time solicitation of business during August and September of 1946. Edgar Gannon stopped trying to get business for Analytical Design, Inc. in September of 1946 because petitioner did not leave full time Government service as he and Mr. Gannon had agreed that petitioner would do. Analytical Design, Inc. continued its existence until at least June 30, 1947. During its existence, the corporation, on a subcontract basis, prepared formats and outlines of technical manuals designed for use by the Army. A part of these manuals were of the same type as would pass through the petitioner's office of civilian chief of the Technical Publications Branch. At the time of the incorporation of Analytical Design, Inc., petitioner contributed the amount of $1,000 to the capital of the corporation. During the taxable year 1946, petitioner made further investments in or loans to Analytical Design, Inc., in the amount of $2,500. During *158 the taxable year 1946, Technical Research, Inc., was a contractor preparing technical manuals for the United States Army. Technical Research, Inc., was organized for the same purposes and engaged in the same activity as did Analytical Design, Inc. Analytical Design, Inc. prepared outlines of technical manuals for Technical Research, Inc. It also advised the latter as to the format which the transportation corps desired in technical manuals which Technical Research was working on as a subcontractor for other manual preparing agencies in New York City. On October 1, 1946 Technical Research, Inc. issued a check in the amount of $5,000 payable to "A. Yates". This check was drawn for services partially rendered and for future services to be performed by Analytical Design, Inc. for Technical Research, Inc. It was the intention of Technical Research, Inc. that the check was in effect to be payable directly to petitioner acting as the alter ego of Analytical Design, Inc. The check was made payable to "A. Yates" at the suggestion of petitioner. A. (Amanda) Yates is the maiden name of the wife of petitioner's brother, James Fragala. James Fragala was at that time a "representative" of *159 Analytical Design, Inc. The $5,000 check was signed by Louis Root on behalf of Technical Research, Inc. After placing his signature on the check, Root gave it to Edgar Gannon who delivered it to James Fragala at the office of Analytical Design, Inc. On October 3, 1946 Amanda Yates opened a bank account with the Manufacturers Trust Company, New York, New York, making an initial deposit of $5,400. Of the amount of $5,400 deposited to the account of Amanda Yates, $5,000 was represented by the $5,000 check which bears her endorsement and that of the Manufacturers Trust Company under the date of October 3, 1946. On November 1, 1946, Amanda Yates withdrew the amount of $5,000 from her account with the Manufacturers Trust Company and gave it to petitioner. On November 1, 1946, petitioners consummated the purchase of a house located at 130-19 Lefferts Boulevard, Ozone Park, New York. On that date, petitioners paid the amount of $6,117.45 in cash on the purchase price. Approximately one month prior to November 1, 1946, petitioners had made a down payment on the house in the amount of $1,000. Petitioner and six other defendants were indicted by the Grand Jury of the United States District *160 Court, Eastern District, New York. The indictment charged that during the period beginning on or about April 15, 1946 and ending on or about March 1, 1947 the defendants had conspired to commit offenses against and defraud the United States in connection with certain Army contracts for the preparation of technical manuals. The indictment also charged, inter alia, that, as a part of the conspiracy, petitioner and Edgar Gannon would organize Analytical Design, Inc. for the purpose of selling specialized and technical services to various technical manuals writing agencies, and that in return for the recommendation of petitioner and Gannon that the co-defendant, Technical Manuals, Inc., be selected to perform certain contracts, Technical Manuals would employ Analytical Design, Inc. to assist in the performance of the contracts. It was further charged in the indictment. inter alia, that after Technical Manuals, Inc. was notified of the termination of its contracts it would continue to perform work on the contracts to inflate the percentage work done; that petitioner, as Deputy Chief, Technical Publications Branch, Army Transportation Corps, would, with full knowledge of the facts, approve *161 payment for such work; that Technical Manuals, Inc. would agree to pay certain sums of money, the exact amount unknown, to petitioner from the funds received from such contracts. On May 19, 1955, petitioner pleaded guilty to these charges in that he, with others, conspired to commit offenses against and to defraud the United States by making false and fraudulent statements and representations. As a result, petitioner was sentenced to prison for nine months. Petitioners realized income during 1946 in the amount of $10,100 which they failed to include and report in their return for 1946. Petitioners' claimed deduction for medical expenses in the amount of $415.16 is not allowable; and deductions for $525.20 for miscellaneous deductions also are not allowable because such deductions were not substantiated. Part of the deficiency for 1946 is due to fraud with intent to evade the tax. Petitioners failed to show reasonable cause for failure to file a declaration of estimated tax; the failure to file a declaration was due to willful neglect. Petitioners substantially underestimated their tax for 1946. The stipulated facts are found as stipulated, and the stipulation is incorporated *162 herein by this reference. Opinion HARRON, Judge: The first issue relates to the source or sources of certain expenditures made by the petitioners in 1946 which were greatly in excess of their reported gross income for the same year. The petitioners reported gross income for 1946 in the amount of $4,596.73. In the same year petitioner made an original capital contribution of $1,000 to a wholly owned corporation, Analytical Design, Inc., and later, within the year, advanced an additional $2,500 to the corporation. Petitioners also made a cash payment of $7,117.45 towards the purchase of a dwelling in 1946. Of the total amount thus expended, $10,617.45, respondent determined that $10,100 represented unreported income. Respondent by witnesses and documents proved that the expenditures were made by petitioners in 1946, and petitioners do not deny making the expenditures. One of the petitioners, Louis L. Fragala, the only petitioner who appeared, and who hereinafter is referred to as petitioner, made the claim that the source of the expenditures was from accumulated savings of some eight or nine thousand dollars. Petitioner was vague about this source. He had no bank records and *163 did not call his wife, or any other witness, to corroborate his story. Respondent on the other hand traced the petitioner's record of earnings upon his graduation from high school down through the year in issue. His salary from 1933 to 1936 was $2,080 per year. From 1936 to October 1940 he earned $1,500 per year. He was inducted into the Army but was discharged about one year later because he was unable to support his family which consisted of a wife and two children. From October 1941 to September 1942 petitioner received a salary which ranged from $1,680 to $2,400 per year. During 1943 through 1946 his salary varied from $4,000 to $4,500 per annum. In 1945 a third child was born to petitioners. Upon consideration of all of the evidence, it is our conclusion that it would have been impossible for petitioner to save and accumulate out of his earnings the amount which is in dispute here. Considering his wages and the size of his family, we think that remaining solvent would be his primary effort. Petitioner does not claim that he had nontaxable income from any other sources, and he offered no leads for respondent to verify. It is noted that petitioners, after the trial, in their *164 brief belatedly referred to other possible sources of savings. Petitioner contends on brief that he had additional income in the form of military and civilian allowances, subsistance and reserve pay, but he failed to introduce any proof to that effect. Petitioner, on brief, says that his wife was employed by a blouse manufacturer for seven years prior to 1933, but no proof on this point was presented. We cannot properly consider contention of this since it was not made at the trial of this case. If we give petitioners the full benefit of any doubts, we cannot see how this can overcome the respondent's determinations. We therefore cannot accept the petitioners' contention that they had an accumulated cash fund at the end of 1945, and in view of the evidence about petitioner's earnings, we are not bound to accept testimony which appears to be highly improbable and manifestly unreasonable. . We believe the respondent not only has negatived all possible sources of nontaxable income but also has proved petitioners' sources of taxable income. In 1946 petitioner occupied a position with the Federal Government in which he was charged with the duty *165 of selecting contractors, approving contracts, and recommending for approval the preparation of technical manuals. This duty was breached by the petitioner and he was indicted for conspiracy to defraud the United States. Petitioner pleaded guilty to this charge. Respondent traced certain of the steps employed by petitioner to defraud the Government and they are set forth in the Findings of Fact. In 1946 Technical Research, Inc., a contractor preparing technical manuals for the United States Army, drew a check for $5,000 payable to "A. Yates". This check was intended as compensation to the petitioner presumably for his influence in placing contracts with it and later in approving the manuals submitted. The maiden name of the wife of petitioner's brother is Amanda Yates. She deposited the check in a savings account in her name. On November 1, 1946 she withdrew the $5,000 and turned it over to petitioner. On the same day petitioner completed the transaction for the purchase of a dwelling and tendered $6,117.45 in cash. Approximately one month earlier they had tendered $1,000 in cash on the execution of the contract of sale. Petitioner admits that he received the $5,000 but he testified *166 that he turned the money over to his corporation, Analytical Design, Inc. This explanation is self-serving and is uncorroborated. We do not believe the petitioner. There are many points which he could not explain as he ought to have been able to do if his explanation were true. He could not recall the name of the bank which had an account in the name of the corporation; the evidence does not show that in fact the $5,000 was deposited in a bank account of the corporation. Although respondent was able to trace only $5,000 of the $10,100 which he determined to be petitioners' unreported income, we are convinced that he has shown a very likely source of additional taxable income. We hold the petitioners had $10,100 of unreported taxable income in 1946. Respondent disallowed $415.16 of medical deductions, and $525.20 of miscellaneous deductions for lack of substantiation. The petitioners offered no evidence in support of any of the claimed deductions. Petitioners have the burden of proving error in the respondent's disallowance of the deductions. , aff'd . Petitioners have failed in their burden of proof. The respondent's *167 disallowance of the deductions is sustained. The 50 per cent additions to tax under section 293(b), 1939 Code, are sustained. Respondent, who has the burden of proof under this issue, presented evidence which is clear and convincing that part of the deficiency is due to fraud with intent to evade tax. The respondent must meet his burden of proof with respect to fraud. . In the absence of admissions on the part of the petitioner, circumstantial evidence must be given weight in considering whether fraud is proved. Direct evidence of fraud is seldom available. . Fraudulent intention to evade tax is a fact which may be found from a careful consideration of all of the evidence, together with any inferences which properly may be drawn therefrom. , aff'd . The petitioner attempted to conceal income when he received compensation from Technical Research, Inc., by having its check made payable to his sister-in-law. This probably was done to conceal petitioner's fraud against the Government under the circumstances *168 relating to the receipt of the check, but the arrangement also served to conceal petitioner's income. This income was not reported. The concealment of property or income, in the light of the surrounding circumstances, can be construed, properly, as evidence of fraudulent intent to evade tax. Emilie Furnish Funk, 29 T.C. - (Filed November 20, 1957). Petitioner's financial history shows that he could not have accumulated any substantial amount of savings. His expenditures, apart from normal living expenses, were more than twice the gross income which he reported in 1946. Failure to report a large amount of income is substantial evidence of fraud. . It is our opinion that petitioners' failure to report income was not the result of an innocent mistake, but was, rather, calculated to defraud the Government of tax. , aff'd , certiorari denied, . Under the above holding, petitioners' gross income from sources other than wages exceeded $100, and therefore they were required to make and file a declaration of estimated tax for 1946. Petitioners did *169 not do so, and there is nothing in the record to show that their failure was due to reasonable cause rather than willful neglect. The additions made by the respondent pursuant to sections 294(d)(1)(A) and 294(d)(2), 1939 Code are sustained. . Decision will be entered for the respondent. Footnotes
*. Includes period 12/16/42 to 12/31/42.↩